**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN CLAYTON JEFFERS,**

        **Petitioner,**

        **v.**

**WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY,**

        **Respondent.**

        **CASE NO. 2:13-CV-229
JUDGE MICHAEL H. WATSON
Magistrate Judge Elizabeth A. Preston Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This case involves Petitioner's underlying convictions after a jury trial in the Gallia County Court of Common Pleas on murder and theft of a motor vehicle.  On April 4, 2008, the State court imposed a sentence of life with possibility of parole after fifteen years.  The Ohio Appellate Court affirmed Petitioner's convictions.  He did not timely appeal.  The Ohio Supreme Court denied his motion for a delayed appeal.

This matter now is before the Court on Respondent's *Motion to Dismiss*, Petitioner's *Response*, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge concludes that this action is barred by the one-year statute of limitations under 28 U.S.C. § 2244(d) and therefore **RECOMMENDS** that Respondent's *Motion to Dismiss*, Doc. No. 7, be **GRANTED** and this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of this case as follows:

A jury found John Clayton Jeffers, defendant below and appellant herein, guilty of (1) murder in violation of R.C. 2903.02(A), and (2) theft of a motor vehicle in violation of R.C. 2913.02(A)(1).

Appellant assigns the following errors for review: [FN1]

FN1. Appellant's brief contains "propositions of law," rather than "assignments of error" as required by App.R. 16. We will nevertheless treat them as "assignments of error." Also, the brief does not contain a "statement of the assignments of error" as required by App.R. 16(A)(3).

FIRST ASSIGNMENT OF ERROR:

"THE LOWER COURT ERRED WHEN IT PERMITTED THE STATE TO CALL INTO QUESTION APPELLANT–DEFENDANT'S CHARACTER TRAIT AND PROPENSITY FOR VIOLENCE BY ALLOWING A KEY STATE WITNESS TO TESTIFY THAT HE HAD A HISTORY OF VIOLENCE IN A MURDER TRIAL."

SECOND ASSIGNMENT OF ERROR:

"THE LOWER COURT COMMITTED REVERSIBLE ERROR BY ADMITTING A FIVE–PAGE STATEMENT OF WITNESS INTO EVIDENCE WHEN IT WAS CLEARLY INADMISSIBLE HEARSAY."

Andrea Hughes first met appellant when she was sixteen years old and he thirty-two. The couple had a sporadic two year relationship and eventually reunited on July 13, 2007 when Hughes decided to "stay" with appellant. The couple took up residence on the bank of the Ohio River near the Island View Motel. [FN2]

FN2. It is unclear whether the two were "camping" or were homeless and living by the river. Hughes's testimony suggests the latter, but the term "campsite" was also used several times during the testimony.

On the evening of July 19, 2007, appellant and Hughes walked to the motel. They soon met Larry Cox, who was residing at the motel during the summer while working at a nearby power plant. The three visited Cox's room and began to drink beer and watch Country Music Television. [FN3]

FN3. Appellant and Hughes both admitted to drinking whiskey and being somewhat inebriated before they met Cox.

At some point during the evening, appellant removed his boot and began to complain about his feet. Cox looked at appellant, dismissed his complaint and stated that his feet were in far worse shape and hurt more than appellant's feet. Not to be outdone, appellant proclaimed that he was "from an abusive family," spent "10 years in prison" and had lived a "rough life." Recognizing this rhetorical gauntlet, Cox responded that he, in fact, lived a much harder life than appellant. This exchange soon escalated into a heated argument over who had lived the more difficult life. Eventually, appellant attacked Cox, knocked him to the floor and stomped his head and neck.

After the attack, appellant ordered Hughes to grab Cox's wallet and keys. The couple ran outside, found the victim's vehicle and drove to appellant's sister's house in West Virginia. Cox managed to exit the motel room and walk approximately one hundred feet before he collapsed and died. Appellant was arrested the following day.

The Gallia County Grand Jury returned an indictment charging appellant with murder and motor vehicle theft. At trial, appellant admitted to the motor vehicle theft and, despite his earlier denials during police interviews, admitted that he was in the motel room and with the victim on the day in question. Appellant testified, however, that Cox attacked him, that he and Cox then had a normal fight and that he did not "stomp" Cox. Further, appellant claimed that he observed Cox sitting on a bed, seemingly fine, when he and Hughes left the motel.

After hearing the evidence, the jury found appellant guilty as charged on both counts. For the murder conviction, the trial court sentenced appellant to serve life imprisonment without possibility of parole for fifteen years. For motor vehicle theft, the court ordered an additional eighteen month sentence with the prison sentences to be served consecutively. This appeal followed.

Appellant's first assignment of error involves the testimony of his girlfriend, Andrea Hughes. [FN4] Hughes testified that appellant was the aggressor in the confrontation, that he repeatedly "stomped" the victim and that she obeyed his command to take Cox's car keys and wallet because she was afraid of appellant. When asked to elaborate on this last point, Hughes explained that Jeffers had beaten her in the past, and that if she disobeyed him,

she was afraid that she may be "next" (i.e. receive abusive physical contact). Appellant argues that this evidence was prejudicial and deprived him of a fair trial. We disagree with appellant.

FN4. It is unclear whether Hughes and appellant are still involved in a relationship. Although Hughes was the chief prosecution witness against appellant, she also testified that she has continued to write letters to him.

Our review of the record reveals that during cross-examination, defense counsel thoroughly and expertly challenged Hughes's credibility. Among other things, she was asked if she did "anything to stop" the assault. At another point, counsel pointed out to the jury that the victim was "lying [there] bleeding" and all Hughes did was "grab the wallet ... and his keys" but "offer [ed] no help." This was effective defense advocacy. By the same token, however, the prosecution rehabilitated Hughes to explain why she was afraid of appellant, not only to stop the assault but also why she followed appellant's command to take Cox's wallet and keys. Hughes was thus asked on re-direct examination how many times appellant had struck her. She responded that she "couldn't even begin to tell."

We believe that this testimony was not introduced, as appellant contends, to prove a character trait of violence and to show that appellant acted in conformity with that character trait, but rather to explain why Hughes was afraid of appellant and (1) did nothing to stop the assault and (2) grabbed Cox's keys and wallet when appellant instructed her to do so. We readily acknowledge that relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Evid. R. 403(A). Courts, however, have considerable discretion to make that determination and those decisions should not be reversed absent an abuse of that discretion. *State v. Beal*, Clark App. No. 07–CA–86, 2008–Ohio–4007, at ¶ 51.

It is also important to recognize that an abuse of discretion is more than either an error of law or judgment; rather, it implies that a trial court's attitude is unreasonable, arbitrary or unconscionable. *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335; *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898. In reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181. Generally, to establish an abuse of discretion the result must be so palpably and grossly

violative of fact or logic that it evidences not the exercise of will, but perversity of will; not the exercise of judgment, but defiance of judgment; and not the exercise of reason, but, instead, passion or bias. *Vaught v. Cleveland Clinic Found*, 98 Ohio St.3d 485, 787 N.E.2d 631, 2003–Ohio–2181, ¶ 13; *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.

In the case *sub judice*, in view of the questions asked of Hughes on cross-examination and the prosecution's need to explain and convince the jury that Hughes was indeed afraid of appellant and why she followed his commands, we find nothing arbitrary, unreasonable or unconscionable in the trial court's decision to allow Hughes to testify that appellant had previously beaten her.

Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

Appellant's second assignment of error involves the trial court's decision to admit into evidence, over appellant's objection, a handwritten statement that Hughes made to police. The prosecution introduced this evidence apparently in response to the fact that appellant's counsel pointed out during his cross-examination that Hughes expected to receive favorable sentencing treatment for her complicity to auto theft conviction and that her trial testimony conflicted with the earlier statement that she had given to the police. Appellant claims that Hughes's statement constitutes inadmissible hearsay and the "damaging contents of the statement" were prejudicial to him, thus meriting a reversal.

Hearsay is defined as a statement, other than one made by the declarant at trial, offered to prove the truth of the matter asserted. Evid. R. 801(C). Hearsay evidence is generally inadmissible. Evid. R. 802. Police reports are usually considered to be inadmissible hearsay and should not be submitted to the jury. *State v. Leonard* 104 Ohio St.3d 54, 2004–Ohio–6235, 818 N.E.2d 229. However, certain rules of evidence and exceptions may apply and result in a statement's admissibility.

Evid. R. 801(D)(1)(b) provides that a statement is not hearsay if the declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. Thus, the rule permits the rehabilitation of a witness whose credibility has been attacked by means of a charge of fabrication or false testimony in return for

5

improper motivation or influence. *State v. Lopez* (1993), 90 Ohio App.3d 566, 630 N.E.2d 32; *State v. Totarella* Lake App. No.2002–L–147, 2004–Ohio1175. To fall under Evid. R. 801(D)(1)(b), the consistent statements that the offering party seeks to introduce to rehabilitate their witness must have been made prior to the emergence of the improper influence or motive. *State v. Edwards* (1999), Lorain App. No. 97CA006775. Once again, we point out that the admission or exclusion of evidence generally rests in the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 51 N.E.2d 343. This standard also applies to decisions concerning hearsay statements. However, questions concerning evidentiary issues that also involve constitutional protections, including confrontation clause issues, should be reviewed de novo. *State v. Hardison* Summit App. No. 23050, 2007–Ohio–366. Technical rules of evidence and hearsay questions cannot defeat fundamental due process rights. *State v. Landrum* (1990), 53 Ohio St.2d 107, 115, 559 N.E.2d 710, citing *Green v. Georgia* (1979), 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738.

In the case *sub ju*dice, appellant's trial strategy challenged Hughes's testimony, both concerning her accuracy and her motivation. Appellant noted that Hughes had entered a plea to a criminal charge and had agreed to cooperate with authorities to testify at appellant's trial. Hughes's sentencing was scheduled to occur after appellant's trial. In light of the events that transpired at trial, we find no error with the trial court's decision to admit Hughes's statement into evidence.

Moreover, even if we assume for purposes of argument that the statements's admission constitutes error, we do not believe that such error constitutes reversible error. Harmless trial errors are to be disregarded and the erroneous admission of evidence is not reversible unless it affects a substantial right that prejudices the defendant. See Crim.R. 52(A); Evid. R. 103(A); *State v. Mathers,* Lorain App. No. 07CA9242, 2008–Ohio–2902, at ¶ 26; *State v. Drew,* Franklin App. No. 07AP467, 2008–Ohio–2797, at ¶ 22. We find nothing of that sort here.

Our review of the record reveals nothing in Hughes's statement to police that is more prejudicial than her actual trial testimony. Indeed, the statement appears largely consistent, cumulative and repetitive. *See State v. Granderson* 177 Ohio App.3d 424, 2008–Ohio–3757, 894 N.E.2d 1290. We also point out the overwhelming nature of the evidence against appellant. Not only did appellant's girlfriend testify against him, but several witnesses

6

who saw him shortly after the attack observed that he was very nervous and that he asked them to refrain from mentioning that they had seen him. The Ohio Bureau of Criminal Investigation (BCI) found the victim's blood on appellant's boot, which is consistent with the "stomping" that Hughes described. The Gallia County Corner further corroborated Hughes's version of events, as well as an assistant coroner from Montgomery County who oversaw Cox's autopsy. Perhaps the most damaging evidence, however, was appellant's admission that immediately after his arrest, he lied to police about not being present at the motel. Appellant later admitted to virtually everything in this case, except about who instigated the conflict and the severity with which appellant attacked Cox. In short, we simply cannot conclude that the admission of Hughes's statement prejudiced appellant.

Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error. Having considered all the errors assigned and argued in the brief, and finding merit in none of them, the judgment of the trial court is hereby affirmed.

*State v. Jeffers*, No. 08CA7, 2009 WL 930063 (Ohio App. 4th Dist. March 31, 2009).  Petitioner did not file a timely appeal to the Ohio Supreme Court.  On October 26, 2011, Petitioner filed a motion for a delayed appeal.   On December 21, 2011, the Ohio Supreme Court denied Petitioner's motion for a delayed appeal.

On March 11, 2013, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He indicates that he executed the petition on February 25, 2013. *See Petition*, Doc. No. 1, PageID #14.  He asserts that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds, repeated here verbatim:

1.   The lower court erred when it permitted the State to call into question Appellant-Defendant's character at trial and propensity for violence by allowing a key State witness to testify he had a history of violence in a murder trial.

2.  The lower court committed reversible error by admitting a five page statement of [a] witness into evidence when it was clearly inadmissible hearsay.

3.  My appeal was late for filing in the Supreme Court of Ohio because I didn't have proper paper work and didn't have help from counsel to prepare my case.

It is the position of the Respondent that this action must be dismissed as time-barred and that Petitioner's claims, in any event, are procedurally defaulted.

**Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d) provides**:**

(d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

8

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, Petitioner's judgment of conviction became final in May 2009, when the forty-five days passed for him to file a timely appeal to the Ohio Supreme Court. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 460 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, –– U.S. —, 132 S.Ct. 641 (2012)). The statute of limitations expired one year later, on May 18, 2010. Petitioner's October 26, 2011 motion for a delayed appeal to the Ohio Supreme Court did not toll the running of the statute of limitations because Petitioner filed this motion after the statute of limitations had already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir.2003) (The tolling provision of § 2244(d) (2) "does not ... 'revive' the limitations period (*i.e*., restart the clock at zero); it can only serve to pause a clock that has not yet fully run"). Additionally, the Ohio Supreme Court denied the motion for a delayed appeal. Petitioner's motion for a delayed appeal therefore is not considered a "properly filed" action so as to toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2). *See Pace v. DiGuglielmo,* 544 U.S. 408, 413-14 (2005) (existence of exceptions to a timely filing requirement can prevent a late application from being considered improperly filed) (citing *Artuz v. Bennet*, 531 121 S.Ct. 361); *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir. 2001) (when a court denies a motion for delayed appeal, the statute of limitations does not reset, although it is tolled during the time the motion was pending. motion for relief from judgment not properly filed under § 2244(d)(2)).

Further, Petitioner has not alleged any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See Holland v. Florida*, 560 U.S. ——, 130 S.Ct. 2549, 2560 (2010) (statute of limitations may be equitably tolled in extraordinary

circumstances). Petitioner asserts his *pro se* status, loss of paperwork in the prison system for sixth months; the death of two family members; and limited access to the prison's law library as justification for equitable tolling of the statute of limitations. *See Memorandum in Support of Petitioner's Response.* This Court is not persuaded by these arguments.

In *Holland*, 130 S.Ct 2562-63, the Supreme Court explained that a petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id. (citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Petitioner has failed to meet this standard.

"[P]etitioner bears the ... burden of persuading the court that he or she is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Equitable tolling should be used sparingly. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560 (6th Cir. 2000) (citations omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id*. at 560–61. The Supreme Court has allowed equitable tolling where a claimant actively pursued judicial remedies by filing a timely, but defective pleading, or where he was induced or tricked by his opponent's misconduct into allowing the filing deadline to pass. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Where the claimant failed to exercise due diligence in preserving his legal rights, courts are much less forgiving. *Id.; Jurado v. Burt*, 337 F.3d 638, 642–43 (6th Cir. 2003). A prisoner's *pro se* incarcerated status, lack of knowledge regarding the law, and limited access to the prison's law library or to legal materials together or along do not provide a sufficient justification to apply equitable tolling of the statute of limitations. *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 751 (6th Cir. 2011) (citation omitted). These conditions are typical of

most habeas corpus petitioners and do not constitute an extraordinary circumstance beyond the Petitioner's control. *Lowe v. State,* No. 2:120CV–142, 2013 WL 950940, at *7 (S.D. Ohio March 12, 2013) (citing *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004)). Further, nothing in the record indicates that Petitioner's limited access to the prison's law library or legal materials prevented him from filing his Petition for the length of time at issue here. Moreover, the record fails to reflect the Petitioner was diligent in pursuing his claims. The Ohio Supreme Court denied Petitioner's motion for a delayed appeal on December 21, 2011.  Petitioner waited more than two years later, until February 25, 2013, to execute this habeas corpus petition.

Actual innocence may justify the equitable tolling of the statute of limitations. *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005):

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-- that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be

> applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298,
> 115 S.Ct. 851, 130 L.Ed.2d 808.

*Id*., at 589–90 (footnote omitted).   A petitioner who asserts a convincing claim of actual innocence need not establish that he was diligent in pursuing this claim.[1]   *McQuiggin v. Perkins*, -- U.S. --, 133 S.Ct. 1924, 1932-33 (2013) Unexplained delay, however, still undermines the petitioner's credibility.   "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"   *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 332, 327).

Here, Petitioner has failed to argue or provide credible evidence of actual innocence. Moreover, a review of the record reveals that Petitioner cannot establish a convincing claim of actual innocence. Thus, Petitioner has failed to establish he is entitled to equitable tolling because he is actually innocent, regardless of his diligence in pursuing relief on this claim.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that respondent's *Motion to Dismiss*, Doc. No. 7, be **GRANTED** and this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo*

---

[1]   The United States Supreme Court noted that "[a] showing that delay was part of a deliberate attempt to manipulate the case . . . might raise a different ground for withholding equitable relief."   The Supreme Court, however, did not reach the issue because it was not raised in this particular case. *McQuiggin v. Perkins,* 133 S.Ct. at 1936.

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

        /s *Elizabeth A. Preston Deavers*
        Elizabeth A. Preston Deavers
        United States Magistrate Judge

Date:  January 15, 2014